UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MIRA S. LAMI, :
:
    Plaintiff, : NO. 3:05CV1416 (MRK)
:
v. :
:
JANE STAHL, ANNE GOBIN, :
GINA McCARTHY and LINDA YELMINI, :
:
    Defendants. :

**RULING AND ORDER**

In this case, Mira Lami, an employee of the State of Connecticut, sues various state administrators under 28 U.S.C. § 1983, claiming disparate treatment in her compensation in violation of the Equal Protection Clause and retaliation in violation of the First Amendment. For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 32].

**I.**

The Court will briefly recite the facts here and discuss them in greater detail as the Court addresses each of Ms. Lami's claims. As is required, the Court relates and considers the facts in the light most favorable to Ms. Lami and draws all reasonable inferences in her favor. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

The claims in this case arise out of Ms. Lami's employment as a "General Worker" for the State of Connecticut (the "State"). Ms. Lami was originally hired in April 2001 by the Connecticut Department of Environmental Protection (the "DEP") as a Seasonal Resources Assistant. In October 2001, Ms. Lami was hired as a General Worker for the DEP. At the time, the General Worker position was an unclassified position, meaning that it was not part of the State's civil service system.

General Workers were paid on an hourly basis, with no benefits, and the position was not considered to be a permanent position in state service. From the time she was hired by the DEP in 2001 until August 2004, Ms. Lami worked in the Emission Inventory Unit in Hartford, Connecticut. Over this three-year period, Ms. Lami's co-workers in the Emission Inventory Unit included, among others, the following individuals: Christopher Mulcahy, an Air Pollution Control Engineer 3; Victor Cooper, an Air Pollution Control Engineer 2; and Andrew Pollak, an Air Pollution Control Engineer 3. Ms. Lami was paid less than these three co-workers because of her General Worker status. In this lawsuit, she asserts that she performed work that was similar in nature to the work performed by these three co-workers (in addition to filling in for them when they were away) and that the disparity in compensation between what she received and what her co-workers were paid violated the Equal Protection Clause.

During the course of her employment at the DEP, Ms. Lami applied for numerous other positions within the DEP, including permanent classified positions. Ms. Lami reports that she was informed that she was unqualified for most of these positions. In June 2003, Ms. Lami met with her bureau chief, Defendant Anne Gobin, to inform Ms. Gobin that she was interested in a permanent position at the DEP. In November 2003, Ms. Gobin encouraged Ms. Lami to apply for an Environmental Analyst position, and Ms. Lami did so, but she claims that she never received a response to her application. In May 2004, Ms. Lami discovered that the Environmental Analyst positions had been filled. She then met with Ms. Gobin, who informed Ms. Lami that her resume was unimpressive, and encouraged Ms. Lami to meet with someone from Human Resources to help revise her resume. Later that day, Ms. Gobin's secretary called Ms. Lami to schedule her for an interview on June 3, 2004 for an unnamed anticipated position. Following the interview, Ms. Lami

was not offered the job, and in July 2004, she discovered that the position had been filled. Ms. Lami sent an email to Ms. Gobin on July 21, 2004, asking why she did not receive an offer for the anticipated position. According to Ms. Lami, Ms. Gobin never responded to her inquiry.

On August 9, 2004, Tracy Babbidge, an Assistant Director to the Planning & Standards Division of the DEP, emailed Ms. Lami requesting a meeting. The meeting took place on August 11, and during the meeting Ms. Babbidge informed Ms. Lami that, effective August 13, she would be transferred to the Kellogg Environmental Center in Derby, Connecticut for a three-month assignment. Ms. Lami asserts that on the following day, August 12, Ms. Babbidge informed Ms. Lami that she would not be able to transfer back to Hartford after she completed her three-month assignment in Danbury. On the same day, Ms. Lami contacted Defendant Jane Stahl, then Acting Commissioner of the DEP, by email, requesting that Ms. Stahl allow her to perform her duties in Hartford because she did not have a car, making a commute to Danbury difficult, and because she knew that her duties at the Kellogg Environmental Center were web-based, and therefore could be performed in Hartford. On September 3, 2004, Ms. Lami met with Ms. Stahl to discuss her disappointment with her transfer and the surrounding circumstances. On September 7, 2004, Ms. Stahl emailed Ms. Gobin and Ms. Babiddge expressing sympathy for Ms. Lami's situation and stating that she would work to find Ms. Lami a permanent appointment at the DEP. Ms. Lami sent Ms. Stahl numerous emails to follow up on their meeting, but on November 5, 2004, Ms. Stahl informed Ms. Lami that she had been unable to locate a permanent position for Ms. Lami at the DEP.

Also on November 5, Ms. Lami emailed Governor Jodi Rell regarding her employment at the DEP as a General Worker. Later that month, Governor Rell's office directed that benefits be extended to all General Workers, effective January 1, 2005, and that the title of "General Worker"

no longer be used after June 20, 2005. It is not clear from the record how Governor Rell's directive was related, if at all, to Ms. Lami's email. As a result of the State's changed policy regarding General Workers, Ms. Lami was informed, in a letter dated November 24, 2004, that her termination from state service had been postponed. On December 1, 2004, the Connecticut General Assembly Committee on Labor and Public Employees held an Information Hearing concerning General Worker issues. Ms. Lami was unable to attend the meeting, but she submitted a written statement to the Committee expressing her views on the General Worker designation. Later in December 2004, according to Ms. Lami, Defendant Gina McCarthy, who was appointed as Commissioner of the DEP on December 10, 2004, and Defendant Linda Yelmini, the Commissioner of Connecticut's Department of Administrative Services, offered Ms. Lami a position as an Environmental Intern, effective December 24, 2004, which Ms. Lami accepted. This lawsuit was filed in September 2005.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp.*

*Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in the original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rest upon . . . mere allegations or denials . . . ." Fed. R. Civ. P. 56(e). Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

Ms. Lami asserts two claims. The Court will discuss them in turn.

*Equal Protection*

In her Complaint, Ms. Lami makes a number of allegations, after which she summarily states that "[i]n the manner described above, the defendants have subjected the plaintiff to a deprivation of her right to equal protection of the laws, in violation of the Fourteenth Amendment . . . ." Compl. [doc. # 1] para. 19. Ms. Lami specifies in her Memorandum in Opposition to Motion for Summary Judgment [doc. # 33] ("Memorandum in Opposition"), though, that she brings her Equal Protection claim as an *Olech*-style "class of one" claim. *See id.* at 1; *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Based on her Complaint, the Court has difficulty discerning which allegations Ms. Lami

relies upon to prove such a claim. Unfortunately, Ms. Lami's Memorandum in Opposition provides little additional assistance. For illumination, therefore, the Court turned to Ms. Lami's answers to interrogatories, which were attached to her Memorandum in Oppositions, *see* Interrogatory Answers [doc. # 33-3]. In response to a question inquiring how her Equal Protection rights were violated, Ms. Lami states: "I was only paid the hourly wage of a General Worker, while workers who were similarly qualified or less qualified and performing identical or similar duties received much greater pay and benefits." *Id*. at 47-48. Therefore, Ms. Lami's Equal Protection claim rests solely on her allegation that she was paid less than co-workers despite the fact that, according to Ms. Lami, her co-workers' duties were identical or similar to her own.[1]

In another recent case, the Court reviewed the case law regarding class-of-one Equal Protection claims in the context of public employment. *See Pina v. Lantz*, No. 3:04CV1574 (MRK), 2007 WL 1964560 (D. Conn. July 6, 2007). The Court will not repeat those observations at length here, but refers readers to the *Pina* decision for a more detailed discussion of the subject. Suffice it to say that in *Pina*, the Court observed that the Second Circuit had not yet definitively stated whether *Olech* applies in the public employment context but that the Ninth Circuit's had recently held that "the class-of-one theory equal protection theory is inapplicable to decisions made by public employers with regard to their employees." *See Engquist v. Oregon Department of Agriculture*, 478 F.3d 985, 996 (9th Cir.2007). Nevertheless, the Court in *Pina* concluded that *Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir.2005) suggested that the Second Circuit believed that class-of-one claims were

---

[1] Even if the Court were to construe Ms. Lami's equal protection claim more broadly to include, in addition, allegations of not being hired for positions to which she applied, Ms. Lami has not provided the Court with similarly situated comparators for such claims, and therefore the Court would grant summary judgment to Defendants for any such claims. *See Pina v. Lantz*, No. 3:04CV1574 (MRK), 2007 WL 1964560, at *10-*13 (D. Conn. July 6, 2007).

viable in the public employment context, and therefore, until instructed otherwise, the Court would apply *Olech* to the public employment context (despite misgivings, outlined in *Engquist*, about the wisdom of doing so). *See Pina*, 2007 WL 1964560, at *10.

The Second Circuit, however, has left no doubt that an *Olech* plaintiff must meet a high threshold to prevail on such a claim. *See id.* at *11. Specifically, for a plaintiff to demonstrate that she was treated differently from similarly situated individuals in an irrational manner, in violation of the Fourteenth Amendment, the plaintiff must prove that she is "prima facie identical" to her comparators. *Neilson*, 409 F.3d at 105. Furthermore, a plaintiff must show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citing *Neilson*, 409 F.3d at 105); *see also RJB Props., Inc. v. Bd. of Educ. of Chicago*, 468 F.3d 1005, 1010 (7th Cir. 2006) ("The plaintiff's evidence must be such that it allows a reasonable jury to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.") (internal quotation marks omitted); *Blackhawk Sec., Inc. v. Town of Hamden*, No. 3:03CV2101 (MRK), 2005 WL 1719918, at *3-*4 (D. Conn. July 22, 2005) (discussing the high standard of similarity required for *Olech* claims).

Here, Ms. Lami offers as comparators her three co-workers in the Emission Inventory Unit –Messrs. Mulchahy, Cooper, and Pollak. However, it is apparent from the record that these comparators are far from *prima facie* identical to Ms. Lami. For one, all three comparators held permanent classified positions as an Air Pollution Control Engineer 2 or 3, while Ms. Lami's General

7

Worker position was unclassified. Beyond mere job titles, there are myriad other distinctions between Ms. Lami and her comparators. One of the most obvious differences are the years of experience working at the DEP. Mr. Pollak was hired by the DEP in 1972, Mr. Mulchahy was hired in 1987, and Mr. Cooper was hired in 1992. Thus, all three were hired at least nine years before Ms. Lami was hired in 2001. Furthermore, unlike Ms. Lami, the three comparators had received various promotions over the course of their employment with the DEP, while Ms. Lami had received none.

Furthermore, Ms. Lami herself conceded in her deposition that her comparators were not similarly situated in all material respects. Ms. Lami stated that Mr. Mulchahy, in his capacity as Lead Engineer, had trained Ms. Lami for her job and was the only person in her group that trained new employees. *See* Defendants' Memorandum in Support of Motion for Summary Judgment [doc. # 32] Ex. 9 (Deposition of Ms. Lami) at 67-68. Ms. Lami did not train new employees. Ms. Lami also conceded that Mr. Cooper attended meetings that she was not allowed to attend and that he oversaw mobile source emissions rather than the point source emissions Ms. Lami worked on. *See id.* at 69. Finally, while Ms. Lami asserts that she "performed exactly the same duties" as Mr. Pollak, *see* Interrogatory Answers [doc.# 33-3] at 13, she also acknowledged that Mr. Pollak was her superior and that she reported to him, *see* Defs.' Mem. in Supp. of Mot. for Summ. J. [doc. # 32] Ex. 9 at 69. No employees reported to Ms. Lami.

Because Ms. Lami is not asserting a gender-based discrimination claim but is instead relying on similarity alone to support her Equal Protection claim, she faces an *even more stringent* standard in proving that she is similarly situated to her comparators than would be true had she claimed

8

gender discrimination.² *Cf. Neilson*, 409 F.3d at 106 ("Where a plaintiff in a class of one equal protection case relies on similarity alone, a more stringent standard must be applied than is applied in a racial discrimination case. Otherwise, the plaintiff in the former will perversely find it easier to perform an illegal act than in the latter."). The Court finds that no reasonable juror could conclude that Ms. Lami has met this high threshold for proving similarity. Thus, the Court finds that Ms. Lami is unable to establish that she is *prima facie* identical to her comparators and therefore the Court will grant summary judgment to Defendants on Ms. Lami's Equal Protection claim. *See Clubside, Inc.*, 468 F.3d at 159.

*First Amendment Retaliation*

Ms. Lami also brings a First Amendment retaliation claim. The Second Circuit has explained that "to establish a First Amendment retaliation claim, plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006); *Mangiafico v. Blumenthal*, No. 3:04cv74(MRK), 2007 WL 283115, at *6 (D. Conn. Jan. 30, 2007).

As with her class-of-one Equal Protection claim, Ms. Lami's Complaint [doc. # 1] and Memorandum in Opposition [doc. # 33] provide little clarity regarding the basis for her retaliation claim. The only adverse employment action that Ms. Lami appears to allege is her transfer to the

---

² "To prove discrimination under the Equal Pay Act, a plaintiff must show that: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Lavin-McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001) (internal quotation marks omitted). Ms. Lami has not asserted a gender-based pay disparity claim and for good reason, since she would be unable to show that her job required equal skill, effort, and responsibility as the jobs of her comparators.

9

Kellogg Environmental Center in August 2004. *See* Memorandum in Opposition [doc. # 33] at 1, 18. The Court will assume *arguendo* that Ms. Lami's transfer to the Kellogg Environmental Center was an adverse employment action. Ms. Lami also does not expressly state what incidents constituted constitutionally protected speech sufficient to satisfy the first element of a *prima facie* retaliation claim. However, she appears to focus on her written testimony submitted to the General Assembly Committee on Labor and Public Employees in December 2004. *See id.* at 1 ("After the plaintiff testified publicly at a legislative hearing considering the subject of 'general workers' as a group . . . she was subjected to changes in her job duties and work site which adversely impacted her life."); *id*. at 14. Therefore, the Court will further assume that her protected speech was her General Assembly Committee testimony.

The fatal flaw in Ms. Lami's First Amendment retaliation claim is that her written testimony to the General Assembly Committee occurred *after* she was transferred to the Kellogg Environmental Center. Because the purported protected speech occurred after the purported adverse employment action, Ms. Lami cannot prove that her speech was a motivating factor for her transfer and thus cannot prove a *prima facie* case of First Amendment Retaliation.

Even if Ms. Lami were to rely on her conversations with Ms. Gobin, Ms. Stahl, or Governor Rell as protected speech, she would still be unable to prove a *prima facie* First Amendment retaliation claim. First, Ms. Lami's contact with Ms. Stahl and her email to Governor Rell similarly occurred after her notice of transfer, thereby making them irrelevant to her retaliation claim. Furthermore, Ms. Lami's conversations with Ms. Gobin and Ms. Stahl appeared to relate solely to her personal employment situation and did not touch in any way on a matter of public concern. Public concern "is something that is a subject of legitimate news interest; that is, a subject of general

interest and of value and concern to the public at the time of publication." *Locurto v. Giuliani*, 447 F.3d 159, 174 (2d Cir. 2006) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)). The record does not reflect, in any way, that Ms. Lami's conversations with Ms. Gobin and Ms. Stahl related to anything involving the broader issue of General Workers. Finally, Ms. Lami provides no tangible evidence tying her conversations with Ms. Gobin to Ms. Babbidge's announcement of Ms. Lami's transfer to the Kellogg Environmental Center. *See Mangiafico*, 2007 WL 283115, at *7 ("'[T]o satisfy the causal connection requirement of the prima facie case . . . plaintiffs must aver some tangible proof demonstrating that their protected speech animated [the adverse employment decision]. They may not rely on conclusory assertions of retaliatory motive.'") (quoting *Washington v. County of Rockland*, 373 F.3d 310, 321 (2d Cir.2004)).

Because Ms. Lami's retaliation claim relies primarily on statements Ms. Lami made after her transfer, and because any statements made prior to her transfer neither involved matters of public concern nor were tied with any tangible proof to her transfer, the Court will grant summary judgment to the Defendants on Ms. Lami's First Amendment retaliation claim.[3]

### IV.

In sum, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 32] and **the Clerk is directed to close the file.**

---

[3] Having granted summary judgment as to both of Ms. Lami's claims, the Court finds that it need not, and therefore will not, reach the question of whether the Court lacks personal jurisdiction over Ms. McCarthy and Ms. Yelmini in their individual capacities due to lack of proper service. *See* Defs.' Mem. in Supp. of Mot. for Summ. J. [doc. # 32] at 5-6.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: July 31, 2007**.